MARK D. ROSENBAUM, SBN 59940
mrosenbaum@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
T: (213) 977-5220, F: (213) 417-2220

RONALD L. OLSON, SBN 44597
Ron.Olson@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Fl,
Los Angeles CA 90071-1560
T: (213) 683-9100, F: (213) 683-5111

JOHN C. ULIN, SBN 165524
John.Ulin@aporter.com
ARNOLD & PORTER, LLP
777 South Figueroa Street
Los Angeles, CA 90017
T: (213) 243-4228, F: (213) 243-4199

LAURENCE H. TRIBE, SBN 39441
tribe@law.harvard.edu
HARVARD LAW SCHOOL*
Hauser 420, 1575 Massachusetts Ave.
Cambridge, MA 02138
T: (617) 495-1767
*For identification purposes only

Attorneys for Plaintiffs
(Additional counsel listed on next page)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY VALENTINI, *et al.*,<br><br>         Plaintiffs,<br><br>  v.<br><br>ERIC SHINSEKI, *et al.*,<br><br>         Defendants. | Case No. CV-11-04846-SJO (MRW)x<br><br>The Honorable S. James Otero<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      January 14, 2013<br>Time:     10:00 a.m.<br>Courtroom: 1 |

Additional Counsel

GARY L. BLASI, SBN 70190
blasi@law.ucla.edu
UCLA SCHOOL OF LAW*
405 Hilgard Avenue
Los Angeles, California 90024
T: (310) 206-9431, F: (310) 206-1234

AMOS E. HARTSTON, SBN 186471
ahartston@innercitylaw.org
MELISSA A. TYNER, SBN 269649
mtyner@innercitylaw.org
ELIZABETH HAMAN KUGLER,
SBN 273928
EKugler@innercitylaw.org
ADAM MURRAY, SBN 199430
amurray@innercitylaw.org
INNER CITY LAW CENTER
1309 East Seventh Street
Los Angeles, CA 90021
T: (213) 891-2880, F: (213) 891-2888

PETER ELIASBERG, SBN 189110
peliasberg@aclu-sc.org
DAVID B. SAPP, SBN 264464
dsapp@aclu-sc.org
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
T: (213) 977-5220, F: (213) 417-2220

JONATHAN MASSEY
jmassey@masseygail.com
*Pro Hac Vice*
MASSEY & GAIL LLP
1325 G St. NW, Suite 500
Washington, D.C. 20005
T: (202) 652-4511, F: (312) 379-0467

ERIC SHAPLAND, SBN 193853
Eric.Shapland@aporter.com
JAMES J. FINSTEN, SBN 234999
James.Finsten@aporter.com
JACOB K. POORMAN, SBN 262261
Jacob.Poorman@aporter.com
ARNOLD & PORTER, LLP
777 South Figueroa Street
Los Angeles, CA 90017
T: (213) 243-4228, F: (213) 243-4199

JOHN RAPPAPORT, SBN 254459
John.Rappaport@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Fl,
Los Angeles CA 90071-1560
T: (213) 683-9100, F: (213) 683-5111

LEONARD GAIL
lgail@masseygail.com
*Pro Hac Vice*
Massey & Gail LLP
50 East Washington St., Suite 400
Chicago, IL 60602
T: (312) 283-1590, F: (312) 379-0467

*For identification purposes only

PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, January 14, 2013 at 10:00 a.m., or at any appropriate time before or after this date as the Court may order, before the Honorable S. James Otero in Courtroom 1, Roybal Federal Building, 312 North Spring Street, Los Angeles, California 90012,  Plaintiffs will, and hereby do move this Court for an Order 1) directing Defendants to supplement the Administrative Record; and 2) directing Defendants to make Mr. Ralph Tillman, the declarant who certified the completeness of the existing Administrative Record, available for deposition.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of James J. Finsten in support of this Motion and attachments thereto, the Administrative Record, the complete files and records in this action, and such other written or oral arguments that may be presented to the Court.

This Motion is made following a conference of counsel held pursuant to Local Rule 7-3, which took place on November 8, 2012.

Dated:  November 22, 2012.          ARNOLD & PORTER LLP


By:   /s/ John C. Ulin
      John C. Ulin
      Attorneys for Plaintiffs

---

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................. 1

II.  BACKGROUND .............................................................................. 2

III. ARGUMENT .................................................................................... 5

     A.  Defendants Excluded Numerous Relevant Land-Use
         Agreements From The Record. ............................................... 6

     B.  Conspicuous Temporal Gaps Exist in the Financial
         Documents That Defendants Included in the Record. ........... 8

     C.  Defendants Did Not Include in the Record Any Documents
         Related To the "Sharing Agreement Database" Maintained
         by DVA. .................................................................................. 9

     D.  Defendants Did Not Include in the Record a Number of
         Individual Documents Referenced in Documents That Were
         Included in the Record. ......................................................... 10

         1.   Westside Services ........................................................ 11

         2.   Sodexho Marriott Laundry Services ............................ 12

         3.   Brentwood School ........................................................ 12

         4.   UC Regents ................................................................... 12

         5.   Twentieth Century Fox Television ............................... 13

         6.   Westside Breakers ........................................................ 13

     E.  Limited Discovery Is Necessary To Ascertain the Proper
         Scope of the Record. ............................................................ 14

IV.  CONCLUSION .............................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Animal Defense Council v. Hodel*,
  840 F.2d 1432 (9th Cir. 1988)
  *amended*, 867 F.2d 1244 (9th Cir. 1989) ................................................15

*Bar MK Ranches v. Yuetter*,
  994 F.2d 735 (10th Cir. 1993) ...............................................................15

*Califano v. Sanders*,
  430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977) ...........................16

*Camp v. Pitts,*
  411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) ...........................14

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971) ..........................16

*City & County of San Francisco v. United States*,
  930 F. Supp. 1348 (N.D. Cal. 1996)................................................14, 15

*Fund for Animals v. Williams*,
  391 F. Supp. 2d 191 (D.D.C. 2005).......................................................14

*Hells Canyon Preservation Council v. U.S. Forest Service*,
  593 F.3d 923 (9th Cir. 2010) ...................................................................9

*Lloyd v. Illinois Regional Transp. Authority*,
  548 F. Supp. 575 (N.D. Ill. 1982) ...........................................................6

*Miami Nation of Indians of Indiana v. Babbitt*,
  979 F. Supp. 771 (N.D. Ind. 1996)...................................................6, 8, 9

*Portland Audubon Society v. Endangered Species Committee*,
  984 F.2d 1534 (9th Cir. 1993) .............................................................5, 11

*Public Power Council v. Johnson*,
  674 F.2d 791 (9th Cir. 1982) ..............................................2, 14, 15, 16

*Thompson v. United States Dep't of Labor*,
  885 F.2d 551 (9th Cir. 1989) .........................................................1, 5, 8, 10

PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

*Veterans for Common Sense v. Shinseki*,
    678 F.3d 1013 (9th Cir. 2012) ...........................................................4

*Walter O. Boswell Mem'l Hosp. v. Heckler*,
    749 F.2d 788 (D.C. Cir. 1984) ...........................................................8

**STATUTES, RULES AND REGULATIONS**

28 U.S.C. § 2401(a) ...........................................................................9

76 Fed. Reg. 36955 (June 23, 2011) .................................................6

Local Rule 7-3 ...................................................................................1

PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Under governing Ninth Circuit precedent, the Administrative Record ("Record" or "AR") prepared by Defendants must contain everything "considered by the [Department of Veterans Affairs], either directly or indirectly" in its decisions to enter into the numerous land-use agreements encumbering the West Los Angeles Campus that Plaintiffs challenge. *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555-56 (9th Cir. 1989). Defendants, however, have submitted a Record that fails to include documentation regarding a number of land-use agreements that Plaintiffs explicitly alleged in their First Amended Complaint that Defendants had entered into in excess of statutory authority. By excluding any documents related to these agreements, Defendants have attempted to unilaterally limit the scope of Plaintiffs' claim and foreclose, by fiat through their preparation of the Record, this Court's review of at least twelve land-use agreements that Plaintiffs identified and challenged in the First Amended Complaint. Even in the documentation that Defendants did include in the Record, conspicuous and unexplained temporal gaps exist for various categories of documents. By partially including such documents in the Record, Defendants acknowledge that they relied upon such categories of documents in entering into the land-use agreements. Moreover, the Record itself references a number of documents that Defendants have omitted.

In short, the Record does not contain everything considered directly or indirectly by the Department of Veterans Affairs ("DVA") in entering the land-use agreements that encumber the West Los Angeles property, as required to assure that this Court can properly adjudicate Plaintiffs' APA claim. Moreover, given the glaring holes and inconsistencies in what Defendants have submitted, it is unclear what criteria Defendants used in constructing the Record.[1] The absence of any coherent criteria and the apparent

---

[1] Prior to filing this motion, as part of the meet and confer process contemplated by Local Rule 7-3, Plaintiffs sent Defendants a letter dated November 6, 2012 outlining their

(Footnote Cont'd on Following Page)

PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

attempt by Defendants to unilaterally limit the scope of this action through their manner of preparing the Record raise serious concerns that Defendants have not undertaken this statutorily mandated responsibility in good faith.

Plaintiffs therefore respectfully request an order requiring Defendants to complete the Record.  Moreover, to assure the Court and Plaintiffs that the documents included in a supplemented Record are, in fact, the "whole" record, Plaintiffs request an order permitting Plaintiffs to depose Ralph Tillman, the declarant who certified the completeness of the Record, to determine the appropriate content of the Record.  *See Public Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982) ("There are instances . . . in which the courts admit certain testimony in the judicial proceeding, or provide limited discovery when serious gaps would frustrate challenges to the agency's action." (citations omitted)).

## II.   BACKGROUND

Plaintiffs in this action are veterans with severe mental disabilities who are homeless because of those disabilities, and Vietnam Veterans of America ("VVA"), which is asserting associational standing on behalf of its members.  Plaintiffs' remaining claim in this case arises under the Administrative Procedure Act ("APA").  Plaintiffs

---

(Footnote Cont'd From Previous Page)

concerns regarding the deficiency of the Record.  *See* Declaration of James J. Finsten In Support Of Plaintiffs' Motion To Supplement Administrative Record ("Finsten Decl.") ¶ 3, Ex. 1.  Late yesterday, following the conference of counsel, Defendants served a Notice of Filing of Supplement to Administrative Record (Dkt No. 98).  With this filing, Defendants effectively concede the incompleteness of the Record as originally submitted.  Moreover, the submission underscores that the Record, even as supplemented, continues to have glaring holes.  Finally, the addition of certain documents to the Record— specifically the documents related to three of land-use agreements for which Defendants initially included documents in the Record—raises even more serious questions about the process and criteria Defendants used in completing the Record, not to mention calling into question the thoroughness of their search for documents that are part of the "whole record."  In sum, yesterday's limited supplementation of the Record remains wholly insufficient for the reasons outlined in this Motion, and further underscores the need to take Mr. Tillman's deposition to complete the Record before disposition of Plaintiffs' claim.

PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

1  allege that DVA, by and through its secretary Eric Shinseki and the Greater Los Angeles
2  ("GLA") Healthcare System Director Donna M. Beiter, has violated the statutory
3  scheme established by Congress for use of the West Los Angeles Medical Center &
4  Community Living Center campus ("WLA Campus").  First Amended Complaint
5  ("FAC") at ¶¶ 27, 268 - 275; 311-315 (Dkt. No. 24).  The violations arise through
6  "existing land deals on the WLA Campus into which VA GLA officials entered in
7  excess of statutory authority."  FAC at ¶ 27.  In their FAC, Plaintiffs specifically alleged
8  a number of separate land deals that are among the subjects of their APA claim.  *See,*
9  *e.g.*, FAC at ¶ 24 (enumerating various land deals encumbering the WLA Campus); FAC
10  at ¶ 260 (referring to the "21 current land use agreements" acknowledged by DVA in the
11  West Los Angeles VA Medical Center, Veterans Programs Enhancement Act of 1998
12  (VPEA) Draft Master Plan).  Moreover, the FAC does not limit the claim, or the relief
13  sought, to the enumerated land use agreements; rather, it challenges all of the land use
14  agreements.  *Id.* at ¶¶ 311-12.

15       Defendants moved to dismiss the six claims asserted in Plaintiffs' FAC—two
16  Rehabilitation Act claims, two breach of fiduciary duty claims, a claim for accounting,
17  and an APA claim.  *See* Motion to Dismiss (Dkt. No. 32).  In its Order on Defendants'
18  Motion to Dismiss, the Court dismissed Plaintiffs' accounting and breach of fiduciary
19  duty claims but otherwise denied Defendants' Motion.  Order Granting in Part and
20  Denying in Part Defendants' Motion to Dismiss (Dkt. No. 70).  With respect to the APA
21  claim, the Court rejected Defendants' arguments that Plaintiffs had not sufficiently
22  alleged final agency action and had failed to identify the agreements they challenge,
23  their grounds for the challenge, or any basis to deem an executed ESA a final agency
24  action.  Motion to Dismiss at 10 (Dkt. No. 32).  Specifically, the Court found that
25  Plaintiffs are challenging "any agreements that do not concern the sharing of health-care
26  resources" (Order Granting in Part and Denying in Part Defendants' Motion to Dismiss
27  at 6 (Dkt. No. 70)), that "Plaintiffs are challenging the Defendants' decision to enter into
28  specific land-use agreements pursuant to ESAs" (*id.* at 17), and that Plaintiffs' APA

- 3 -

1  claim "contests specific land use agreements between the DVA and private and
2  commercial entities, which are referenced in the VA GLA's Master Plan" (*id*. (*citing*
3  FAC ¶¶ 260-63 & the Master Plan)). Thus, the land deals that are the subject of
4  Plaintiffs' APA claim are the twenty one agreements identified in the master plan and
5  any other "current agreements" which encumber the WLA Campus, (FAC at ¶ 23),
6  including those specifically referenced in the FAC. *See* FAC ¶ 24.

7        Defendants then moved for the Court to reconsider its Order on their Motion to
8  Dismiss in light of the Ninth Circuit's *en banc* opinion in *Veterans for Common Sense v.*
9  *Shinseki*, 678 F.3d 1013 (9th Cir. 2012). Motion for Reconsideration and Suggestion of
10  Lack of Jurisdiction (Dkt. No. 83). The Court granted Defendants' motion with respect
11  to Plaintiffs' Rehabilitation Act claims, but left Plaintiffs' APA claim intact. The Court
12  then ordered Defendants to produce the administrative record pertinent to Plaintiffs'
13  APA claim on October 22 in preparation for summary judgment briefing in December.
14  July 23, 2012 Minute Entry (Dkt. No. 90).

15        On October 22, Defendants produced their initial Record, which according to the
16  declaration of Ralph Tillman, "reflects the non-privileged information and materials
17  (exclusive of information and materials that implicate the privacy of third parties, or that
18  constitute or consist of confidential business information) considered by [D]VA in
19  reaching decisions to enter into each of the eleven ESAs identified in the administrative
20  record as the subjects of that record." Certification of the Administrative Record at ¶ 2
21  (Dkt. No. 96-1) ("Tillman Decl."). The Record consists of selected "Authorities and
22  Guidance" and documents associated with eleven "Enhanced Sharing Agreements in
23  Effect as of June 2011." Dkt. No. 96-1 at p. 5. Defendants did not, however, include in
24  the Record any documents related to numerous land-use deals that Plaintiffs specifically
25  identified in the FAC and alleged were entered into in excess of statutory authority,
26  including the leases with Enterprise Rent-A-Car and Tumbleweed Transportation for
27  vehicle storage and/or sales; a lease for operation of an oil well; an agreement to allow
28  TMC, LLC to operate a farmer's market; agreements with Richmark Entertainment to

- 4 -

1  operate the Wadsworth and Brentwood Theaters; an agreement with the City of Los
2  Angeles to operate a dog park; and agreements to allow movie and television filming.
3  *See, e.g.*, FAC ¶ 24.

4  **III.   ARGUMENT**

5         An administrative record must include "all documents and materials directly or
6  *indirectly* considered by agency decision-makers and includes evidence contrary to the
7  agency's position." *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555-56
8  (9th Cir. 1989) (citation omitted; emphasis in original); *see also Portland Audubon*
9  *Society v. Endangered Species Committee*, 984 F.2d 1534, 1548 (9th Cir. 1993) (the
10  "whole record" under the APA includes "everything that was before the agency
11  pertaining to the merits of its decision."). The Record submitted by Defendants omits
12  several categories of documents that were undoubtedly considered by agency decision-
13  makers in deciding whether to sign the land-use agreements challenged in this case.

14        First, it covers only eleven land-use agreements, even though the appendix to the
15  master plan for the WLA Campus identifies twenty-one land use agreements that were in
16  effect as of June 2011. Moreover, the Record fails to include any documentation
17  relevant to additional land uses that were specifically identified and alleged to be in
18  excess of statutory authority in the First Amended Complaint, specifically the uses by
19  Enterprise Rent-A-Car and Tumbleweed Bus Company. Through these omissions,
20  Defendants have attempted to unilaterally limit the scope of Plaintiffs FAC, contrary to
21  this Court's prior order construing Plaintiffs' FAC to challenge "any agreements that do
22  not concern the sharing of health-care resources." Order Granting in Part and Denying
23  in Part Defendants' Motion to Dismiss at 6 (Dkt. No. 70). Second, there are significant
24  temporal gaps in the financial records that Defendants included in the Record for some
25  of the eleven land-use agreements that they did include in the Record. Third, the Record
26  identifies a "Sharing Agreement Database," no part of which was included with the
27  Record. Fourth, for the eleven land-use agreements for which Defendants included
28  documents in the Record, the included documents identify or reference additional

documents as being relevant to the decision to enter to a specific land-use agreement, but Defendants did not include these specifically referenced documents in the Record.

Because Defendants failed to include the categories of documents described above, they have failed to prepare and file the "whole record" as required under the APA.  Defendants must therefore supplement the Record to assure that the Court has a full record upon which it can evaluate each agency decision to enter into land-use agreements on the WLA Campus.  Moreover, in light of the glaring defects in the submitted Record and the apparent lack of any coherent criteria or process for preparing the Record, Plaintiffs should be allowed to depose the declarant who certified the Record, Ralph Tillman, to ensure that the supplemented Record is, in fact, complete and will provide the Court and Plaintiffs with the "whole record" upon which to evaluate the legality of DVA's decisions to enter into the challenged land-use agreements.

### A.   Defendants Excluded Numerous Relevant Land-Use Agreements From The Record.

There can be little doubt that Defendants' decision to limit the Record only to eleven agreements renders it incomplete.  Indeed, it is apparent that this decision is an attempt to impermissibly and unilaterally limit the scope of Plaintiffs' APA claim.  *See Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771, 776 (N.D. Ind. 1996) ("[I]t would be improper . . . to allow the federal defendants to determine unilaterally what shall constitute the administrative record and thereby limit the scope of the court's inquiry."), *citing Lloyd v. Illinois Regional Transp. Authority*, 548 F. Supp. 575, 590-91 (N.D. Ill. 1982).

The master plan, which became final on June 23, 2011, *see* 76 Fed. Reg. 36955 (June 23, 2011), includes an appendix listing "Current Land Use Agreements."  AR 000186.  As Plaintiffs alleged in the FAC (*see* FAC ¶ 260), and this Court expressly found at the motion to dismiss stage of this litigation (*see* Order Granting in Part and Denying in Part Defendants' Motion to Dismiss at 17 [Dkt. No. 70]), that appendix lists

PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

21 agreements, one of which is a catch-all for "Filming agreements."[2] Yet, Defendants included documents in the Record for only eleven of the agreements identified in the master plan, leaving ten of the "Current Land Use Agreements" identified in the master plan for which Defendants have produced no documents. Moreover, the FAC specifically alleged that Enterprise Rent-A-Car and Tumbleweed Transportation utilize land on the WLA Campus for vehicle storage and/or sales (*see* FAC ¶ 24), yet the Record contains no documents about the decisions to enter into those agreements.[3] The table below summarizes the known land-use agreements in existence on the WLA Campus that Defendants failed to include in the Record.

| Known Land-Use Agreements Encumbering WLA Campus Not Included in the Record (With Citations to FAC and Master Plan) | | |
|---|---|---|
| **Land Use** | **FAC** | **Master Plan[4]** |
| Enterprise Rent-A-Car | ¶¶ 24 & 261 | N/A |
| Tumbleweed Transportation | ¶¶ 24 & 261 | N/A |
| Red Cross Building | ¶ 261 | Page 36 |
| Barrington Park (Dog Park) | ¶¶ 24 & 263 | Page 36 |
| BrietBurn Energy Oil Well | ¶¶ 24 &262 | Page 36 |
| Filming Sharing Agreements | ¶ 24 | Page 36 |
| New Directions, Inc. (Two Agreements) | ¶ 109 | Page 36 |
| Richmark Entertainment (Use of Theaters) | ¶¶ 24 & 262 | Page 36 |
| South Coast AMD Study Site | N/A | Page 36 |
| TCM, LLC Farmer's Market | ¶¶ 24 & 262 | Page 36 |
| State Veterans Home | ¶¶ 107 & 260 | Page 36 |

---

[2] Records of these and potentially other short-term agreements that are covered by the FAC should be reflected in the "Sharing Agreement Database" which DVA described to Congress but did not include in the Record. *See* Part D *infra*.

[3] To the extent Defendants refuse or are unable to provide documentation explaining the basis for entering into these agreements, the decisions are necessarily arbitrary and capricious.

[4] The master plan was referenced in the FAC, which explicitly noted the appendix that listed 21 "Current Land Use Agreements." See FAC ¶¶ 23 & n.3, 260.

PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Because this paucity of records will confound the Court's ability to assess DVA's decision-making as to land-use agreements omitted from the Record, Defendants must provide the records for all of the land-use agreements challenged by Plaintiffs in the FAC. *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("to review *less* than the full administrative record might allow a party to withhold evidence unfavorable to its case . . . .") (emphasis added); *Babbitt*, 979 F. Supp. at 775 ("Having the 'whole record' . . . is crucial to the court's review under the APA.").

Notably, the Record itself provides no explanation for these omissions and does not identify the criteria or process through which the Record was prepared. By limiting the Record to only these eleven agreements, Defendants effectively have unilaterally (and impermissibly) limited the scope of the FAC. To the extent Defendants intend to argue that Plaintiffs are not entitled to relief as to certain land-use agreements identified in the FAC for some reason, that argument must be based on a complete administrative record with respect to that agreement and is properly an issue for this Court resolve at summary judgment. *See Thompson*, 885 F.2d at 555-56; *Heckler*, 749 F.2d at 792.

## B.   Conspicuous Temporal Gaps Exist in the Financial Documents That Defendants Included in the Record.

Defendants have certified that the documents contained in the record "were considered by [D]VA in reaching decisions to enter into each of the eleven ESAs identified in the administrative record . . . ." Tillman Decl. at ¶ 2. Defendants included in the Record financial records for certain land-use agreements, (*see, e.g.*, AR 000290, 000379, 000445, 000520, 000610, 000666, 000916), but not for others. Thus, Defendants have represented that DVA considered financial records related to only a handful of land-use agreements in its decision-making regarding the formation of land-use agreements. There is no explanation or justification provided for excluding such reports for the other land-use agreements, and it is implausible to suggest that DVA did not consider, directly or indirectly, more than just a snippet of financial information before it regarding the revenue it could reasonably expect to receive from land-use

PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

agreements before entering into such agreements.  *Babbitt*, 979 F. Supp. at 777 ("The inclusion of" some of the documents related to a certain topic "supports the conclusion that" that documents related to that topic "should not be excluded across the board.").[5]

Moreover, the revenue reports that were provided are limited in scope, reflecting only the payment history for January 1, 2011 to September 1, 2012.  *See, e.g.* AR 000290.  There is no explanation, and certainly no legal basis, for imposing such an arbitrary temporal timeframe.  As the documents themselves reflect, the land-use agreements were in effect, and presumably invoices were created and payments received, prior to January 1, 2011.  Such records should cover at least June 2005 through the present, given the six year statute of limitations applicable to Plaintiffs' APA claim.  *See Hells Canyon Preservation Council v. U.S. Forest Service*, 593 F.3d 923, 930 (9th Cir. 2010) (noting that APA claims are subject to a six-year statute of limitations under 28 U.S.C. § 2401(a)).

Complete financial records must be provided for all of the land-use agreements challenged by Plaintiffs in the FAC.  Defendants' unilateral and unjustified exclusion of all such records for certain land-use agreements and limitation of production only to financial history subsequent to January 1, 2011 must be remedied to ensure that the Court has the whole administrative record before adjudicating Plaintiffs' claim.

## C.   Defendants Did Not Include in the Record Any Documents Related To the "Sharing Agreement Database" Maintained by DVA.

The FY 2011 annual report to Congress notes the 2003 creation of a "Sharing Agreement Database" specifically "to provide sufficient information to monitor the use of the sharing authority."  AR 000138.  The report further notes that the database was evaluated in 2008 "to validate its use in monitoring the use of sharing agreements," and

---

[5] Obviously, financial records were not provided for the land-use agreements improperly excluded altogether from the Record, and financial records therefore must be included when Defendants supplement the Record to include documents for the currently excluded land-use agreements.

that "the evaluation indicated that the database was performing the function for which it was created."  AR 000138.

Based on the above description, this database was the central repository of information about numerous land-use agreements—and presumably for all land-use agreements in existence on the WLA Campus.  Thus, the database undoubtedly identifies and contains information about the land-use agreements for which Defendants failed to include any documents in the Record, and also contains additional information about the eleven agreements that Defendants chose to include in the Record.  Yet Defendants failed to include any information or documents from the database from the Record.  Logically, DVA would have considered, at least indirectly, the information contained in this centralized source of information about land-use agreements, their terms, and their associated revenues, when determining the terms and potential value of new land-use agreements.  *See Thompson*, 885 F.2d at 555-56 (noting whole record must include documents directly and indirectly considered by agency).  Indeed, documents that Defendants included in the Record, specifically a form entitled "Self-Certification Review Checklist," confirm that agency decision-makers often compared proposed agreements against other existing agreements in making decisions.  *See, e.g.*, AR 000886 (listing "Cost comparison with other land use agreements" as explanation for "basis of pricing" for one sharing agreement).  Accordingly, all entries in this database relating to the use of the WLA Campus must be included in the Record to ensure that the Court has the whole administrative record before adjudicating Plaintiffs' claim.

> **D.**     **Defendants Did Not Include in the Record a Number of Individual Documents Referenced in Documents That Were Included in the Record.**

In addition to the deficiencies outlined above, there are numerous problems with the completeness of the documentation for the eleven individual agreements that Defendants did include in the Record.  In most instances, it is clear that Defendants relied on materials not included in the Record in reaching their decision to enter into the

agreements.  The following is a non-exhaustive catalogue of the deficiencies that are apparent given the current state of the Record.

### 1.    Westside Services

This is apparently the only agreement in the Record for which DVA conducted an associated Request for Proposals ("RFP").  AR 000921-44.  Although DVA received at least three proposals in response to the RFP (AR 001011), the Record includes only the winning proposal from Westside Services.  The other two bids were clearly considered by Defendants in making their decision to accept the competing bid and therefore should have been included in the Record.  *See Portland Audubon Society*, 984 F.2d at 1548 (the "whole record" under the APA includes "everything that was before the agency pertaining to the merits of its decision.").  Additionally, the first document included in the Record for this agreement is a solicitation letter for an RFP, but Defendants have not included any information about which or how many firms received the solicitation or any documents reflecting the basis for, or analysis of, the decision to initiate the solicitation in the first instance.  In short, there are numerous documents that should exist supporting the decision to initiate an RFP and then select the vendor—all of which were necessarily considered in the decision to execute this agreement—but those documents are absent from the Record.

Furthermore, the original agreement, which apparently commenced on September 1, 1999 (AR 001041), is missing from the Record.  The only executed agreement included in the Record dates from three years later in 2002.  AR 001046-52.  Significantly, the only "Agency Review" documents included in the Record date from the 1999 period (AR 001011-44); there are no documents recording any decision-making process in 2002 (when the agreement term was changed to 10 years with a 10-year option) or 2011, when DVA exercised the option to renew the agreement.  AR 001055.

### 2.      Sodexho Marriott Laundry Services

The "Agency Review Documents" associated with this agreement consist only of two partial email threads and a memorandum regarding approval of the agreement.  AR 000337-39.  These emails strongly indicate that there were further communications concerning this agreement that have not been included with the Record.  Additionally, there were modifications to and renewals of the agreement (AR 000367-78), but Defendants did not include in the Record any documents reflecting the basis for Defendants' decisions to modify or renew the agreement.

### 3.      Brentwood School

The only two documents included in the Record about renewal of the 10-year option on this land-use agreement are a request for renewal (AR 000289) and Defendants' acceptance (AR 000288), which was issued two months after the request was received.  These documents strongly suggest that there were further communications concerning this agreement and DVA's internal deliberations and decision to accept the renewal of the option that have not been included in the Record.  Additionally, there was a modification to the agreement (AR 000280-87), but Defendants did not include in the Record any documents reflecting the basis for Defendants' decisions to modify or renew the agreement.

### 4.      UC Regents

The Record contains emails generated only during the 1998-99 period, though the agreement was not executed until May 2001.  The only other communications in the Record reflecting the basis for Defendants' decision are in a 2008 "Decision Document" and a 2012 Memorandum from Ralph Tillman regarding DVA's desire to enter into a new agreement.  AR 000409-13.  These documents strongly indicate that there were further communications concerning this agreement that have not been included in the Record.  Additionally, the 2012 Tillman Memorandum identifies two attachments—a "Concept Paper" and a "Negotiation Strategy"—but neither appears to have been included in the Record.  Finally, presumably Mr. Tillman did not unilaterally decide to

take these steps (or, at a minimum, he would have conducted some internal analysis before drafting the 2012 memorandum that he sent to the UC Regents), yet no such documents were included.  In short, as was the case for most agreements for which documents were included in the Record, Defendants included documents that reflect a "final decision" by DVA related to a land-use agreement, but fail to account for internal deliberation or decision-making, and documents memorializing that process must be part of the "whole" record.

### 5.    Twentieth Century Fox Television

The agreement with Twentieth Century Fox Television is mentioned in the Decision Document for the UC Regents agreement.  AR 000410.  The Under Secretary noted that "if [the Fox agreement is] terminated, VA will lose . . . an estimated $10 million in revenue and, if terminated for convenience, VA would be forced to repay $500,000."  *Id.*  This strongly suggests that there were further communications concerning this agreement that have not been included in the Record, particularly given the language of the agreement itself.  *E.g.*, AR 000650 (Paragraph G(2)(b) "Termination by DVA for Convenience").  Additionally, as previously noted, the Record does not contain any revenue data for this ESA.  The revenue report for this agreement (AR 000667) is blank.

### 6.    Westside Breakers

The proposal documents included with this agreement consist only of a "Sharing Agreement Concept Paper Outline," which was plainly prepared by DVA staff.  There is, however, no documentation of how the proposal came to be, who initiated contact about this proposed agreement, and whether the specifics of the proposal reflected in the memorandum reflect the original terms or whether there were negotiations to reach the proposed terms (and, if so, who was involved in the negotiations).  Yet again, the Record that Defendants have submitted requires the implausible conclusion that a fully formed proposal from DVA had no origin.

Moreover, the only document included in the executed agreement section is dated August, 6, 2010 (AR 000902), even though there is a certification dated 2007 (AR 000889), a checklist dated 2006 (AR 000886), and various email correspondence from 2005 (AR 000885) and 2002 (AR 000884). Simply put, there are numerous documents related to DVA's decision to enter into this land-use agreement that should exist but that were not included in the Record.

* * *

In order for the Court adequately to assess DVA's decision-making in this case and decide Plaintiffs' APA claim on its merits, Defendants must produce a complete set of the omitted materials and documents. *Johnson*, 674 F.2d at 794-95. Without such materials, it will be impossible to "ensure fair review" of DVA's actions. *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 196-97 (D.D.C. 2005).

### E.     Limited Discovery Is Necessary To Ascertain the Proper Scope of the Record.

As demonstrated above, there are substantial gaps in the Record, because it is clear that DVA relied on material and documents in its decision-making regarding land-use agreements encumbering the WLA campus specifically referenced in the FAC that Defendants did not include with the Record. Further, because DVA did not include in the Record all materials it relied upon, it is not clear what criteria it did use in constructing the Record. Therefore, to determine the proper scope of the Record, it is necessary to obtain deposition testimony from Ralph Tillman, the declarant who has certified that the record is a complete collection of the materials DVA considered.

Though "[j]udicial review of an agency decision is usually limited to the administrative record . . . [t]here are exceptions to this general rule . . . ." *City & County of San Francisco v. United States*, 930 F. Supp. 1348, 1355-56 (N.D. Cal. 1996). "[T]he court may inquire outside of the administrative record 'when it appears the agency has relied on documents or materials not included in the record.'" *Id.* (quoting *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam)); *see also*

- 14 -

*Johnson*, 674 F.2d at 794 (holding that "courts admit certain testimony in the judicial proceeding, or provide limited discovery when serious gaps would frustrate challenges to the agency's action." (citations omitted)).  "When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question."  *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993);  *accord Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) *amended*, 867 F.2d 1244 (9th Cir. 1989).

Defendants, through the declaration of Mr. Tillman, have certified that the Record contains all of the documents and material considered by DVA in its decision-making regarding the eleven land-use agreements identified in the Record (with the exception of confidential and privileged material).  Tillman Decl. at ¶ 2.  This assertion, however, is flatly contradicted by the omissions described above.  Moreover, the certification *explicitly* fails to include *at least* ten land-use agreements identified in the master plan, plus two land uses that are not listed in the master plan but that Plaintiffs explicitly identified and challenged in the FAC.  Thus, it is clear the Record is incomplete.

It is far from clear, however, given the paucity of the Record and the absence of any coherent criteria for preparing the Record that can be discerned based on what Defendants submitted, what other omitted materials (aside from those described above) should also have been included with the Record.  In order to determine the proper scope of the Record, it is therefore is necessary to obtain testimony from Mr. Tillman, as the individual most familiar with the Record and DVA's decision-making regarding the Record, to determine what DVA actually did consider in its decision-making, so that the Record can be completed with such material.  *See Johnson*, 674 F.2d at 793, 794 (allowing depositions of two agency officials "who negotiated the contracts" in challenge to agency action).  Only this will ensure completion of the Record, and thereby allow a full and fair adjudication of Plaintiffs' claim.

Moreover, "courts will go beyond the agency record when agency bad faith is claimed."  *Johnson*, 674 F.2d at 795; *accord Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S. Ct. 814, 825, 28 L. Ed. 2d 136 (1971) *abrogated on*

- 15 -

*other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977).  One of Plaintiffs' theories for the APA claim is that Defendants have misused the healthcare resource sharing authority as a basis for commercial land-use agreements to circumvent Congressional intent in enacting the statutory scheme governing use of DVA land, including the stringent notice and comment requirements in the enhanced use lease ("EUL") authority and the prohibition of invoking the EUL authority on the WLA Campus.  *See, e.g.*, Pls' Br. in Opp. to Motion to Dismiss at 10.  Especially in light of the patently incomplete Record prepared by Defendants here—specifically the exclusion of numerous documents that should exist reflecting DVA's internal process for determining whether to enter into numerous commercial leases on the WLA Campus— this exception to the general deference to the agency's attempt to reconstruct the administrative record in APA claims challenging informal decision-making cases is directly implicated.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request an order from the Court (1) requiring Defendants to complete the Record by producing the omitted items identified in this motion, as well as all material and documents it relied upon, directly or indirectly, in its decision-making regarding the formation of land-use agreements that encumber the WLA Campus, and (2) permitting Plaintiffs to conduct a deposition of Ralph Tillman to ascertain the appropriate scope and content of the record pertinent to DVA's decision-making regarding the land-use agreements.


Dated:  November 22, 2012.            ARNOLD & PORTER LLP


                                      By:    /s/ John C. Ulin
                                             John C. Ulin
                                             Attorneys for Plaintiffs

- 16 -

PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD